UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LOUIS MARCUS TRASK** | \* | **NO. 2019-CV-12682** |
| | \* | |
| **VERSUS** | \* | **JUDGE GUIDRY** |
| | \* | |
| **ST. TAMMANY PARISH SHERIFF'S OFFICE, RANDY SMITH, OFFICER JASON D. WILSON, OFFICER DAVID W. MAKI, AND OFFICER PRESTON S. McCARRA** | \* \* \* \* | **MAGISTRATE DOUGLAS**<br><br>**JURY DEMAND** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**</u>

**MAY IT PLEASE THE COURT:**

**NOW COMES** defendants, Sheriff Randy Smith, in his official and individual capacities, Deputy Jason D. Wilson, Deputy David W. Maki and Deputy Preston S. McCarra ("Defendants"), appearing herein through undersigned counsel, and respectfully submit this memorandum in support of their motion to dismiss pursuant to Rule 12(b)(6) and aver as follows:

## I. BACKGROUND AND ALLEGATIONS

This lawsuit arises out of a September 29, 2018, encounter involving a number of St. Tammany Parish Sheriff deputies and plaintiff, Louis Trask ("Mr. Trask"). As alleged, on or about September 29, 2018 at approximately 10:06 p.m., STPSO Deputy Preston McCarra and Deputy Jason Wilson were dispatched on a "shots fired" complaint and responded as backup units at 62148 North 5th Street, Slidell, Louisiana.[1] Upon arriving at this location, McCarra and Wilson observed fellow STPSO Deputies Taylor Lewis and John Hrabley "running towards a

---

[1] Rec. Doc. 1, ¶10.

group of six subjects, including [Mr. Trask,] at the end of a dead-end street with vehicles in the road near the end of the dead-end street."[2] McCarra and Wilson "quickly rushed" to join their fellow deputies.[3] Upon joining forces, these four deputies then stopped the group of subjects, including Mr. Trask, with weapons drawn.[4] Considering the "shots fired" complaint, the officers then issued loud verbal commands to all subjects to "keep their hands displayed and to slowly walk, one at a time, towards the deputies."[5]

Mr. Trask then informed the officers that he had a firearm magazine in his possession and "requested that the officers approach him and safely restrain him with handcuffs in order to insure the safety of the responding officers." Considering the close-quarters environment (dead-end of a street with cars providing ample cover from which to fire), the substantial risk to officer-safety ("shots-fired"), and Mr. Trask's own statement that he was in possession of a firearm magazine, one or more of these deputies allegedly proceeded to immediately restrain and subdue him to the ground.

On September 9, 2019, Mr. Trask filed the instant suit.[6] Consistent with FRCP 12(b)(6), Sheriff Smith, and Deputies Wilson, Maki and McCarra now move for dismissal, with prejudice, of the federal claims of Mr. Trask against them, for the reasons set forth *infra*.

## II. LAW AND ARGUMENT

### A. *The Standard for a 12(b)(6) Motion and § 1983 Claims*

To withstand a rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Doe v. Covington County Sch. Dist.*, 675 F.3d

---

[2] Rec. Doc. 1, ¶11.
[3] *Id.*
[4] Rec. Doc. 1, ¶12.
[5] Rec. Doc. 1, ¶13.
[6] *See* R. Doc. 1.

849, 854 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to meet the facial plausibility standard, a court must be able "to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court's consideration of facial plausibility must be context-specific and requires resort to judicial experience and common sense. *Ashcroft*, 556 U.S. at 679. This plausibility standard requires more than pleading "the sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Thus, even if the allegations in the complaint are true, if they cannot support a claim to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (quoting 5 Wright & Miller § 1216 at 233–34).

Stated differently, a plaintiff needs to provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Id*. at 555 (citation omitted). A plaintiff cannot simply submit "an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citation omitted). Rather, factual allegations in a complaint must set forth a claim to relief "above the speculative level." *Twombly*, 550 U.S. at 555 (quoting 5 Wright & Miller § 1216 at 235–36). And while factual allegations are accepted as true for purposes of a 12(b)(6) motion, legal conclusions are not. *Ashcroft*, 556 U.S. at 678 (citation omitted).

A plaintiff seeking redress under 42 U.S.C. § 1983, must "establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Manufacturers Mutual Insurance Company v. Sullivan*, 526 U.S. 40 (1999). To be sure, "§ 1983 is not itself a source of

substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal citations omitted).

### B.  Deputies Wilson, Maki and McCarra Are Entitled to Qualified Immunity

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" in situations which "existing precedent . . . placed the statutory or constitutional question beyond debate."  *Whitney v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citations omitted).

To defeat the defense of qualified immunity, a plaintiff must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).  A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994).

In early 2017, the United States Supreme Court issued an opinion in which it "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'"  *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation omitted).  "[T]he clearly established law must be 'particularized' to the facts of the case. *Id*. (citation omitted).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays Cty*., 154 F.3d 523, 525 (5th Cir. 1998).

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official could have believed that his or her conduct was lawful in light of clearly established law and the information possessed by the public official. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341.

To preclude qualified immunity, it is not necessary for a *plaintiff* to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "preexisting law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d at 882; *see also Stefanoff*, 154 F.3d at 525. Although the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (citations omitted).

### *The Framework for Excessive Force Claims*

A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather

90660/462627

than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (emphasis in original). "Substantive due process analysis is therefore inappropriate in [a] case only if [the plaintiff's] claim is 'covered by' the Fourth Amendment." *Hernandez v. United States*, 757 F.3d 249, 278 (quoting *County of Sacramento*, 523 U.S. at 843) (internal quotation marks omitted).

Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id.* at 397 (citation omitted). Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* at 396. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) injury, (2) which resulted directly and only from a use of force that was <u>clearly excessive</u>, and (3) the excessiveness of which was <u>clearly unreasonable</u>." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted) (emphasis added); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citation omitted).

Further, courts "must balance the amount of force used against the need for that force." *Goffney v. Sauceda*, 340 F. App'x 181, 184 (5th Cir. 2009)(per curiam). For example, when a police officer is arresting a "dangerous, fleeing suspect," a certain amount of force has been found reasonable. *Ikerd*, 101 F.3d at 434 (*citing Garner*, 471 U.S. at 3). Ultimately, "'[n]ot every

push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973))(internal citations omitted). In other words, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

### *The Deputies are Entitled to Qualified Immunity*

Mr. Trask can point to no clearly established law particularized to the facts of this case that shows that defendants' alleged actions, even if accepted as true at this stage, are an actionable violation of the Fourth Amendment. Consequently, Deputies Wilson, Maki and McCarra are entitled to qualified immunity for such claims.

Mr. Trask's own allegations of fact show the actions of the STPSO officers to have been reasonable. This was not a typical police-citizen encounter; instead, the deputies were responding as backup to a reported shots-fired incident, one of the tensest calls a deputy may field during his patrols. The first image presented to these deputies as they arrived was their fellow officers <u>running</u> towards a group of individuals at the end of a dead-end street, which was also lined with vehicles providing ample cover for any would-be shooters. At that time, the sun had been set for several hours, and the darkness enveloping the area would have added further strain to an already tense atmosphere. Although the Plaintiff does not specifically state the amount of time that transpired between the deputies' arrival and the alleged excessive force, the allegations of the complaint indicate this entire event occurred over the course of minutes, if not seconds.

For example, the deputies arrive and see their fellow officers literally running towards a group of individuals at the end of the street. The deputies then proceed with all haste and run to

join their fellow officers. The deputies were outnumbered by two. The deputies, unaware of who exactly is the purported shooter they are responding to, then command each individuals to walk one-by-one up to the deputies with their hands raised. The Plaintiff informed the deputies that he was in possession of a firearm magazine. The deputies allegedly made a split-second decision to restrain the Plaintiff to the ground immediately followed this statement, and this decision was plainly reasonable considering the following facts:

1. The deputies were responding to a shots-fired call;
2. The deputies were outnumbered six to four;
3. The sun had set for several hours at the time of this event (approximately 10:12 p.m.);
4. Numerous cars lined the street on which this event took place, providing ample cover for a shooter; and
5. The Plaintiff himself informed the officers that he was in possession of a firearm magazine.

Where there is smoke, there is likely fire, and it was entirely reasonable for one or more of these deputies, as alleged, to make the split-second decision to subdue the Plaintiff to the ground upon hearing he was in possession of at least one firearm magazine. *See City & Cnty of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015) ("The constitution is not blind to the fact that police officers are often forced to make split-second judgments.") (quotations omitted).

It was entirely reasonable for one or more of the deputies to conclude that the Plaintiff likely possessed a firearm, considering the magazine would be useless without one, and officer-safety concerns plainly dictated an immediate use of force to subdue and restrain the Plaintiff to remove that risk. Mr. Trask is unable to offer any controlling law that would clearly establish the use of force in this particular instance to be unreasonable. As such, the individual deputy

defendants are each entitled to qualified immunity and dismissal of all individual capacity claims levied against them under § 1983.

### B. *No Individual Capacity Claim Stated Against Sheriff Smith under § 1983*

Mr. Trask asserts he is suing Sheriff Smith "in both a personal and official capacity."[7] However, there are no factual allegations sufficient to support individual capacity liability as to Sheriff Smith. To establish personal liability, a §1983 claimant must show that the defendant was personally involved in the deprivation or that the defendant's wrongful actions were causally connected to the deprivation. *See Jones v. Lowndes County*, 678 F.3d 344, 349 (5th Cir. 2012). There can be no individual capacity liability of Sheriff Smith in this case because there are no allegations he was personally involved, present or even consulted with respect to any use of force against Mr. Trask or the subsequent arrest.

Further, Mr. Trask sets forth no factual allegations supporting supervisory liability,[8] which requires a showing that "(1) the supervisor either failed to supervise or train the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference." *See Davidson v. City of Stafford*, 2017 U.S. App. LEXIS 5665, p. 23 (5th Cir. 2017) (citation omitted). As such, all individual capacity claims against Sheriff Smith must be dismissed.

Even more, Sheriff Smith is entitled to qualified immunity on any individual capacity claims. Mr. Trask can identify no clearly established case law particularized to the facts of this case which overcomes Sheriff Smith's qualified immunity defense. Mr. Trask alleges only

---

[7] R. Doc. 1, ¶ 1.
[8] Movers note that supervisory officials cannot be liable under § 1983 on any theory of vicarious or *respondeat superior* liability. *See Estate of Davis v. City of N. Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005).

conclusory allegations concerning the individual capacity liability of Sheriff Smith as to his federal claims.  Further, he can point to no clearly established and particularized case law sufficient to overcome Sheriff Smith's defense of qualified immunity on individual capacity claims.  Therefore, all such federal claims against Sheriff Smith should be dismissed, with prejudice.

### C. *No Official Capacity Claim Stated Against Sheriff Smith under § 1983*

Sheriff Smith is also sued in his official capacity. A suit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 5).  "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166 (emphasis original). "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* "[E]very sheriff in Louisiana is a political subdivision unto himself, and there is no such thing as a 'Parish Sheriff's Department' or 'Parish Sheriff's Office.'"[9] *Powe v. May*, 2003 U.S. App. LEXIS 28628, pp. 2–3 (5th Cir. 2003) (citations omitted); *see also Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F. 3d 273, 283 (5th Cir. 2002) (same proposition).  Thus, "official capacity claims" against Sheriff Smith are really claims against the St. Tammany Parish Sheriff—a political subdivision of the State of Louisiana. *See* La. Const. art V, § 27; La. R.S. 13:5102.B

The United States Supreme Court has said that "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694). In

---

[9] Sheriff Smith is, for all intents and purposes, the "political subdivision."

other words, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

>The Fifth Circuit has defined official policy or custom as:
>
>1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
>2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F. 2d 92, 94 (5th Cir. 1992) (citation omitted). Mr. Trask makes only conclusory assertions that Sheriff Smith failed to train, supervise and control his employees concerning proper police procedures pertaining to detention, arrest, and use of force. *See* R. Doc. 1, ¶ 19.

Mr. Trask claims, without any explanation, that there has been a "pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence or reckless disregard fo [sic] the safety, security and rights of Plaintiff." R. Doc. 1, ¶ 26. Nonetheless, there are no factual allegations regarding these other alleged incidents, how those situations relate to Mr. Trask in this action, the content of the Sheriff's alleged policy or custom, or how the Sheriff acted with deliberate indifference in this or other scenarios. *See also Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (a *Monell* custom requires long and frequent course of conduct). In this respect, the United States Supreme Court has been clear that "the tenet that a court must accept as true all of the allegations

contained in a complaint [on a motion to dismiss] is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see G.M. v. Shelton*, 595 Fed. Appx. 262, 265 (5th Cir. 2014) (conclusory statements of *Monell* liability are insufficient); *Spiller v. City of Tex. City, Police Dep't*, 130 F. 3d 162, 167 (5th Cir. 1997) (description of policy or custom and its connection to violation cannot be conclusory); *City of Crowe v. Leblanc*, 2011 U.S. Dist LEXIS 34143, p. 11 (E.D.La. 3/3/11) (general allegations regarding failure to train or moving force theories insufficient), opinion adopted at 2011 U.S. Dist LEXIS 34124 (E.D.La. 3/30/11). Because Mr. Trask has done nothing but plead threadbare, conclusory allegations as to the purported policy or custom, all official capacity claims should be dismissed with prejudice as no viable grounds for liability under *Monell* are stated.

### D. *No Claim Stated Against David Maki in his Individual Capacity*

Mr. Trask has named David Maki as a defendant in this matter; however, the Plaintiff has made no allegations of fact against Deputy Maki to support <u>any</u> cause of action against him under either federal or state law. In fact, Mr. Trask's own complaint fails to place Deputy Maki at the scene of this incident on the night in question. Because Deputy Maki's involvement in this matter is non-existent based upon Mr. Trask's own complaint, a dismissal of all claims against him is necessary for failure to state a claim upon which relief may be granted.

### E. *This Court should decline to exercise supplemental jurisdiction over any remaining state law claims*

28 U.S.C. 1367(c)(3) states that the district court may decline to exercise supplemental jurisdiction over a claim under § 1367(a) if it "has dismissed all claims over which it has original jurisdiction." Generally, a federal court should decline to exercise jurisdiction over supplemental

state law claims when all federal claims are disposed of prior to trial. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). Therefore, Defendants respectfully request that this Court decline to exercise supplemental jurisdiction over the remainder of Plaintiff's state law claims in the event this Court dismisses Plaintiff's federal question claims.

### III. CONCLUSION

For the reasons expressed *supra*, all federal claims against Sheriff Randy Smith, in his official and individual capacities, Deputy Jason D. Wilson, Deputy David W. Maki and Deputy Preston S. McCarra should be dismissed with prejudice.

**Respectfully submitted,**

**MILLING BENSON WOODWARD L.L.P.**

*s/ Chadwick W. Collings*

| | |
|---|---|
| **Chadwick W. Collings, T.A.** | **# 25373** |
| **Cynthia M. Bologna** | **# 27384** |
| **Cody J. Acosta** | **# 37005** |

**68031 Capital Trace Row**
**Mandeville, Louisiana 70471**
**Telephone:    985-292-2000**
**Facsimile:    985-292-2001**
ccollings@millinglaw.com
*Counsel for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana on December 17, 2019, by using the CM/ECF system, which system will send a notice of electronic filing to appearing parties in accordance with the procedures established.

*s/ Chadwick W. Collings*
**Chadwick W. Collings**